## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ABUDALLAH HANNIBAL OAKLEY,

    Petitioner,

    v.

WARDEN CASEY CAMPBELL,
STATE OF MARYLAND,

    Respondents.

Civil Action No.:  SAG-20-766

### MEMORANDUM OPINION

In response to pro se petitioner Abudallah Hannibal Oakley's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, respondents assert that his claims are without merit and that three of the claims raised are procedurally defaulted.  ECF 24.  Oakley filed a reply.  ECF 26.  The record, having been supplemented at the court's direction (ECF 27; ECF 28), is complete and the case is ripe for dispositive review.  No hearing is deemed necessary.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons that follow, the petition shall be denied and a certificate of appealability shall not issue.

### Background

1.    Jury Trial

Oakley was convicted by a jury sitting in the Circuit Court for Baltimore County, Maryland on one count of human trafficking and one count of contributing to the conditions of a minor.  The case against Oakley pertained to his involvement with an underage female working as a prostitute

who is referred to as "K.L." in public court documents.[1]  The two-day jury trial involved testimony of law enforcement officers who conducted a sting operation after it was determined that K.L.'s photograph appeared on a website known as Backpage.com along with text indicating she was involved in prostitution.  K.L. was not present at the trial.

During a pre-trial motions hearing, Oakley's defense attorney raised objections to cell phone exhibits based on the lack of information indicating to whom the cell phones belonged.  The objection was overruled by the trial court, but the court agreed with defense counsel that having police officers interpret the slang terms used throughout the text messages retrieved from the phones was prejudicial.  ECF 28-1 at 23-24.[2]  The court suggested that the State offer someone as an expert in order to have the terminology used translated for the jury and overruled the objection provided that the detective or officer who extracted the information from the phones be available to testify.  *Id.* at 24-25.  Defense counsel also moved to exclude photographs from Backpage.com that the State maintained depicted K.L.  ECF 28-1 at 25-26.  The motion was denied after the State proffered that K.L.'s mother would be testifying that the girl in the ad picture was K.L. and that the phone number and email address listed belonged to K.L.  *Id.* at 26-27.

Prior to voir dire of the jury panel, the State explained to the court what the plea offers presented to Oakley entailed and conveyed that Oakley had rejected the offers.  ECF 28-2 at 3.  The plea offer was then restated on the record with Oakley present; the offer required Oakley to plead guilty to the trafficking charge and in exchange, the State would pursue a ten-year sentence, suspend all but five years.  *Id.* at 10-13.  Additionally, Oakley would be required to register as a Tier II sex offender for 25 years.  *Id.*  Oakley rejected the offer on the record.  *Id.* at 13.

---

[1]        This opinion will also refer to her as K.L.

[2]        Citations to the record reference page numbers assigned by the court's electronic docketing system.

Through the testimony of K.L.'s mother, Sharon Hall, K.L.'s nicknames, her phone number, and her email address were verified. ECF 28-2 at 135-47.

Oakley was arrested after arriving at an agreed upon location in a cab with K.L.; the cab driver, Antonio Hardy, testified that he had picked Oakley up previously and that K.L. was also with Oakley on the prior occasion. *Id*. at 157. Hardy identified two of the three cell phones recovered from inside the cab as his own. *Id*. at 158.

Matthew Vilcek, an FBI Agent working with the Maryland Crimes Against Children Task Force, testified that the task force focused on crimes involving child pornography, human trafficking, and child sex trafficking in Maryland. ECF 28-2 at 163. Vilcek explained that he is a certified online undercover employee for the FBI, meaning he was certified to act in an undercover capacity to investigate crimes involving the sexual exploitation of children. *Id*. at 164. In this case, he worked with Detective Scott Manz in an effort to locate K.L. *Id*. Vilcek and other officers assigned to the operation were looking at "classified postings on . . . website[s] like Craigslist and Backpage.com" in an effort to locate K.L. *Id*. at 165. According to Vilcek, there are areas on those pages where escorts or prostitutes post ads for their services. *Id*. at 166. Vilcek contacted K.L. and arranged to meet her at an address he provided. *Id*. at 172-175.

Detective Blackburn of the Baltimore County Police Vice Unit testified about the use of "Cellebrite," described as a mobile device extracting tool that enables police to extract information stored on a cell phone or tablet and transfer it onto a hard drive. ECF 28-2 at 179. Blackburn explained that the tool will download call logs, all the numbers that have been called from the phone, all text messages, pictures, calendars, and, on some phones, deleted text messages can be recovered. *Id*. at 182. Through Blackburn, the Cellebrite extraction for Oakley's phone was introduced into evidence. *Id*. at 184-186.

3

Detective Richard Prenger testified about the efforts to locate K.L. in a few investigations and related that she had been reported missing ten times.  ECF 28-2 at 195.  Prenger explained he had received pictures of K.L. from her family and had also met her in person.  *Id*. at 199.  In an effort to locate her for Oakley's trial, he accessed her Facebook page and subpoenaed records from Facebook to get the IP address where the account was being accessed, but the IP addresses did not come back to a fixed location and K.L. could not be located for the trial.  *Id*. at 199-200, 202.

Detective Scott Manz was qualified as an expert witness in matters related to prostitution, solicitation of prostitution, and human trafficking.  ECF 28-3 at 20.  During the voir dire of Manz to qualify him as an expert, defense counsel lodged objections as to the form of questions the State was asking Manz regarding his participation in investigations of prostitution and human trafficking.  *Id*. at 14-16.  During a bench conference following the objection, the trial judge explained to the prosecutor why the open-ended questions he was asking were objectionable and gave examples of how the information could be elicited from the witness.  *Id*.  Defense counsel objected to the trial judge's assistance to the State.  *Id*. at 16.  Over defense counsel's objection, Manz was qualified as an expert witness.  *Id*. at 19-20.

During Manz's direct examination, the State attempted to have Manz identify photographs of K.L. that were found in an ad on Backpage.com.  ECF 28-3 at 22-23.  Defense counsel objected because the State had not laid a proper foundation regarding Manz's ability to identify K.L.  *Id*. at 23-24.  The trial judge intervened with two questions establishing that Manz had seen photographs of K.L. given to him by another detective.  *Id*. at 24.  Defense counsel objected and a bench conference ensued.  *Id*. at 24-25.  During the bench conference the following ensued:

> [DEFENSE COUNSEL]:  Your Honor, I want on the record that I object to your assisting the prosecutor in laying crucial foundation for information –
>
> THE COURT:  Right.

[DEFENSE COUNSEL]: --that is absolutely crucial –

THE COURT:  All right.

[DEFENSE COUNSEL]: -- for him to prove the case.

THE COURT:  The Court – Court views that as a non-contested issue in this case and is just trying to establish some background information to move this case along.  So I'm going to overrule your objection, but I will note it for future consideration.
A, B, C, 1, 2, 3, sir. Each step.  Don't skip steps.  Move along.

[THE STATE]:  All right.

THE COURT:  If it takes – if it takes forever, it just takes forever.  You do what you got to do.  But she's –

[THE STATE]:  Do what I got to do.

THE COURT:   Obviously [Defense Counsel] is going to keep lodging objections, which she's – has an absolute – absolute right and duty to her client to do so.  So now you know where we're going.

ECF 28-3 at 25.  The court then overruled the objections and Manz was allowed to testify that he found K.L. on Backpage.com and called the number listed using an undercover cell phone.  *Id*. at 26-27.  Vilcek then spoke to "Paris" and directed her to respond to an address where surveillance had been set up in advance.  *Id*. at 28-29.  The State also introduced the extracted contents of three cell phones found in K.L.'s purse at the time of Oakley's arrest through Manz's testimony.  *Id*. at 67-79.

During closing argument, the State's Attorney made the following remarks:

Also before I get started, I just want to tell you a little bit about my – myself.  I don't use strategies, I'm not using tactics, I'm not using lawyer tricks here.  My job as a prosecutor is to present evidence to get to the truth.  And that's all I want here is to get to the truth, to prove to you all what the truth is and for you to ultimately convict the Defendant.  So with that goal in mind, let's – let's get started.

ECF 28-3 at 125-126.

On January 28, 2015, the jury returned guilty verdicts on human trafficking of a minor and contributing to certain conditions of a child.  ECF 28-3 at 174-176.  Oakley indicated to counsel that he preferred to be sentenced on the same date the verdicts were reached.  *Id*. at 177.  Because K.L. was not present for the proceedings, the State read from the police report regarding her account of what had occurred between her and Oakley.  *Id*. at 178-182.  Additionally, K.L.'s parents spoke to the court.  *Id*. at 183-188.  Although the sentencing guidelines for Oakley were from 12 to 18 years' incarceration (*id.* at 195), the court indicated the sentencing guidelines were not appropriate because "the abuse of this minor child is a vulnerable person."  *Id*. at 196.  Oakley was sentenced to a term of 25 years for human trafficking of a minor and a three-year concurrent term for contributing to the conditions of a minor.  *Id*. at 196-197.  Additionally, Oakley was ordered to register as a Tier II sex offender for 25 years.  *Id*. at 197.

2.      Direct Appeal

In his appeal to the Court of Special Appeals, Oakley raised the following claims: (1) was the circuit court unable to maintain the appearance of impartiality? (2) did the circuit court err in admitting portions of cell-phone extraction reports for phones recovered by the police? (3) did the circuit court err in admitting impermissible lay opinion testimony? and (4) did the circuit court err in ordering separate sentences for pandering and contributing to the delinquency of a minor?  ECF 14-1 at 26.  In an unpublished opinion, the Court of Special Appeals summarized its opinion[3] affirming Oakley's convictions as follows:

> We determine that Appellant's second contention is unpreserved, and even if the first contention was preserved, the record does not support Appellant's challenge to the trial court's appearance of impartiality. As to Appellant's third question, we conclude that the circuit court did not err in admitting impermissible lay opinion testimony because the witness in question did not offer a substantive

---

[3]      Additional portions of the appellate decision relevant to the claims raised by Oakley in this Court are reviewed below.

opinion requiring specialized knowledge, skill, or experience. Finally, we conclude that the merger of Appellant's sentences is not required because each offense that Appellant was convicted of includes an element that the other does not; nor does the rule of lenity or doctrine of fundamental fairness require merger in this circumstance.

ECF 14-1 at 26.

3.    Post-Conviction Proceedings

In a "Supplemental Petition for Post Conviction Relief" filed on Oakley's behalf by counsel, Oakley raised four claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel. ECF 14-1 at 53-56. Oakley alleged that trial counsel was ineffective for failing to: (1) discuss the State's evidence with him, *i.e.*, the specific text messages and photographs of K.L. recovered from his phone, prior to trial so that his decision regarding acceptance of the plea offer by the State would have been an informed one; (2) ask the trial judge to recuse himself from the trial after the judge was impermissibly aiding the State; (3) object to improper comments made by the State in closing argument; and (4) object to the State's remarks during the sentencing phase regarding K.L.'s statement to the police about Oakley. *Id*. at 53-55. Oakley alleged that his appellate counsel was ineffective for failing to raise a discovery violation by the State in connection with photographs of K.L. dressed in clothes "indicative of someone engaging in prostitution." *Id*. at 55. Oakley argued that the trial judge found that there was in fact a discovery violation and that the claim was not waived because it relates to a fundamental right. *Id*. at 55-56.

After a hearing in July, 2018, the post-conviction court ruled from the bench and denied all post-conviction relief. ECF 14-1 at 65-69 (transcript of post-conviction court's ruling). Oakley's application for leave to appeal the denial of post-conviction relief was denied by the Court of Special Appeals on November 16, 2018. *Id*. at 71

7

4.      Claims in this Court

In his amended petition, Oakley asserts that the trial judge failed to maintain the appearance of impartiality when he assisted the State during its direct examination of Detective Manz and when he advised the State on how it could get evidence that Oakley was living with K.L. introduced.   ECF 18 at 5-13.   Oakley also claims the trial court erred when it admitted impermissible lay opinion testimony through FBI Agent Vilcek when the court permitted Vilcek to testify about K.L. being a known prostitute and a minor.   *Id*. at 14-17.

Oakley raises claims of ineffective assistance of trial counsel.   His first claim is that counsel's failure to object to State's exhibits 6, 7, 9, and 15, which were extraction reports from cell phones containing text messages between Oakley and K.L., amounted to ineffective assistance of counsel.   ECF 18 at 18-19.   Secondly, Oakley claims trial counsel erred when she failed to move for the trial judge's recusal after lodging objections to the judge's failure to show impartiality by assisting the State in laying a foundation for evidence that K.L. was a prostitute of a minor age.   *Id*. at 19.   His third claim of ineffective assistance of trial counsel relates to counsel's failure to discuss with Oakley the evidence against him which included specific text messages and photographs of K.L.; Oakley maintains that had he known about the damaging text messages and photographs he would have been more inclined to accept the plea offer of five years.   *Id*. at 20. Oakley also assigns error to his trial counsel for failing to object to improper comments by the State's Attorney in closing argument regarding his own character and manner of advocacy.   *Id*. Lastly, Oakley asserts that trial counsel's failure to object to the State's Attorney's reading of the police report during the sentencing phase, which included details of injuries K.L. had sustained,

amounted to ineffective assistance of counsel because it persuaded the court to impose the maximum sentence of 25 years and to disregard the sentencing guidelines. *Id.* at 21.

Oakley additionally asserts that his appellate counsel rendered ineffective assistance of counsel when counsel failed to "persue [sic] a preserved meritorious issue on appeal" regarding the State's discovery violation. ECF 18 at 21-22. Specifically, photographs of K.L. taken by Detective Manz when he accompanied K.L. to Oakley's residence to retrieve her belongings, admitted as State's exhibits, were not provided to the defense until the first day of the trial. *Id.*

5.     Respondents' Answer

Respondents assert that this court should deny the writ because two of Oakley's claims do not state a cognizable basis for federal habeas relief as they deal only with State evidentiary law, one of Oakley's claims is procedurally defaulted, and all of the claims are meritless by any standard. ECF 24 at 11. Specifically, respondents assert that Oakley's claim regarding the trial judge's lack of impartiality and the alleged error in admitting lay opinion testimony are not federal claims and, regardless, the Maryland Court of Special Appeals' rejection of the claims was reasonable. *Id.* at 20 and 24. Respondents also assert that Oakley's first claim of ineffective assistance of trial counsel in connection with the introduction of exhibits at trial is procedurally defaulted. *Id.* at 25-27. Respondents maintain that all remaining claims are without merit. *Id.* at 27-35.

**Standards of Review**

1.     28 U.S.C. § 2254

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh*

*v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

2.     Ineffective Assistance of Counsel

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging

11

ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696.

In order for Oakley to obtain relief on his ineffectiveness claims, he must show that the adjudication of such claims at the state court level:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(Supp.1997).  The Act further provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1).

As the Supreme Court held in *Strickland v. Washington*, *supra*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id.* at 698.  Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.*  It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.  "The pivotal question is whether the state court's application of the Strickland standard was unreasonable." *Harrington*, 562 U.S. at 101.

**Analysis**

Oakley's claims are addressed below.

**1.       Trial Court Error**

a.       Trial Judge's Impartiality:

Oakley maintains that there were two occasions during the trial that the judge failed to maintain an appearance of impartiality.  He states that the judge impermissibly assisted the State during its direct examination of Detective Manz when attempting to lay a proper foundation for evidence of human trafficking and solicitation for prostitution of K.L.  On the first occasion, the judge called counsel up to the bench after sustaining defense's objection on an answer by Manz that photographs he was shown depicted K.L.  ECF 18 at 6-7.  The trial judge advised the State that Manz was testifying to a fact that had not been established and that he would need to lay some more foundation.  *Id*. at 7.  In open court, the State's Attorney continued to struggle and the trial judge interjected questions of his own to get foundation laid.  *Id*.  On the second occasion, the State asked a witness how he had obtained Oakley's address and the trial judge advised him on how he could get the information into evidence without objection.  *Id*. at 9-12.

Oakley raised a similar claim in his direct appeal.  The Court of Special Appeals rejected the claim, first because the ground was unpreserved due to trial counsel's failure to ask the judge to recuse himself, and also because the claim lacked merit.  The appellate court reasoned that:

> During the first instance of "assistance," the trial court simply informed the State, out of the ear-shot of the jury, that it needed to "lay some more foundation as to [Detective Manz's] knowledge."  After the examination resumed and the trial court recognized that defense counsel was going to continue to object to "a non-contested issue," the trial court intervened and asked two innocuous questions to "move [the] case along," which the court had every right to do.  *See Smith v. State*, 182 Md. App. 444, 480(2008) ("It is well-settled that a presiding judge in a jury trial has discretion to question witnesses in order to ensure that the facts of the case are fully developed."). At no time during its questioning did the trial court indicate its opinion as to the facts of the case, nor did the trial court

convey the impression that it was assessing Detective Manz's testimony or commenting on his credibility.  *See Id.* at 483 (discussing circumstances under which a trial court's questioning of a witness may compromise the appearance of impartiality).

The second instance of "assistance" was equally uneventful. The trial court, again out of the ear-shot of the jury, merely had a discussion with the State about how the State intended to introduce Appellant's address, a discussion that came on the heels of the court's sustaining of defense counsel's objection. The court did not, as Appellant suggests, "hold the hand of the prosecutor during key stages of its case-in-chief."  In fact, the court ended up chastising the State for its inability to follow proper evidentiary procedures, and the State responded by moving on to a different line of questioning.  Any "assistance," therefore, was moot, as the State abandoned that particular area of inquiry.

ECF 14-1 at 37.

Respondents maintain that this claim does not state a federal claim as Oakley relies solely on State law to support his claim.  Further, they maintain that Oakley cannot demonstrate that the Court of Special Appeals decision was an unreasonable application of clearly established federal law or that it amounted to an unreasonable determination of the facts.  Review of the Court of Special Appeals' analysis of this claim reveals that the sole basis for rejecting the claim involved its interpretation of Maryland State law.  As noted *supra*, only an allegation of a violation of federal constitutional law may form the basis for federal habeas relief.  Nevertheless, Oakley argues in his Reply that it is a violation of due process when a trial judge exhibits an apparent bias.  ECF 26 at 1.

While Oakley is correct that a "fair trial in a fair tribunal is a basic requirement of due process," *In re Murchison*, 349 U.S. 133, 136 (1955); here, the Maryland appellate court's analysis of the facts is unassailable.  The entire basis for this claim arises out of commentary made during bench conferences, outside of the hearing of the jury.  There was no commentary by the trial court indicating to the jury that it favored one party over the other or otherwise held any biased beliefs about counsel, the defendant, or the witnesses.  Federal habeas relief is denied on this claim.

14

b.      Admission of Lay Opinion Testimony:

In this claim, Oakley takes issue with the trial court permitting FBI Agent Vilcek's testimony about K.L. being a known prostitute and a minor.  ECF 18 at 14.  Vilcek was allowed to explain that they scour websites for postings of escorts or individuals they suspect are involved in prostitution for anyone who appears to be under the age of 18.  *Id*. at 15.  Oakley argues that Vilcek's testimony that Backpage.com and other websites are used to facilitate human trafficking and prostitution of minors went beyond the knowledge of a lay person permitted under Md. Rule 5-701.  *Id*. at 16.  Oakley adds that Vilcek "did not assist the Jury in any meaningful fashion, but instead, prejudiced Petitioner Oakley at trial where K.L. did not testify." *Id*. at 17.

Oakley raised a similar claim in his direct appeal.  ECF 14-1 at 41-46.  The Court of Special Appeals found that the record was unclear as to whether trial counsel's objection to Vilcek's testimony preserved Oakley's claim that it was impermissible lay opinion testimony.  *Id*. at 44. The appellate court found, however, that Vilcek testified that he had personal knowledge of information indicating K.L. was a prostitute.  That information was not offered to establish that K.L. was in fact involved in prostitution but to "show how Agent Vilcek's investigation unfolded and to establish the events that led to his meeting with K.L." *Id*. at 46.  Moreover, the court found that Vilcek's commentary regarding the Backpage and Craigslist websites being used to advertise prostitution was permissible lay opinion testimony because it was based on Vilcek's personal observation of those sites and was offered to explain how he came across the classified ad featuring K.L. *Id*.

Respondents contend that this claim is based solely on Maryland State law and therefore does not state a cognizable basis for federal habeas relief.  ECF 24 at 24.  In his Reply, Oakley disputes that this claim does not state a federal claim and states that "[i]n order to satisfy it's [sic]

burden of proof, the state must offer sufficient admissible evidence for every element of the crime." ECF 26 at 2, citing *Jackson v. Va.*, 443 U.S. 307, 319 (1979).  Oakley's argument misses the point; the law regarding whether Vilcek's lay opinion was admissible is rooted in State law, not federal constitutional law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas corpus court to reexamine state court determinations on state law questions"). Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice."  *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)), *cert. denied*, 440 U. S. 937 (1979). Such a defect is nor presented by this claim.

### 2. Ineffective Assistance of Trial Counsel

a. Failure to object to State's exhibits 6, 7, 9, and 15:

In his first claim that trial counsel was ineffective, Oakley argues that counsel should have objected to certain exhibits introduced by the State at trial.  ECF 18 at 17-19.  He states that exhibit 6 was used to prove K.L. was a prostitute by eliciting testimony from Manz, that text messages from a cell phone number ending in 9394 were messages from K.L. negotiating prices for sexual acts with location and plans to meet individuals on various dates.  *Id*. at 17-18.  In Oakley's view, the State failed to authenticate that the cell phone number ending in 9394 was owned and used by K.L. on June 20, 2014, the date of his arrest.  *Id*. at 18.  Oakley argues that the State failed to authenticate that text messages were sent to K.L. and that, therefore, exhibit 6 was inadmissible because it was prejudicial.  *Id*.

Oakley also argues that exhibits 7 and 15, which were text messages between a cell phone number ending in 6679 and one ending in 3316, were used to establish that there was a relationship

between Oakley and K.L.  ECF 18 at 18.  The messages pertained to plans for meetings between Oakley and K.L. and also included photographs of K.L. from the cell phone number ending in 6679.  *Id*.  He maintains that neither exhibit establishes that K.L. was a prostitute of a minor age, nor does it prove Oakley's participation in human trafficking or prostitution of K.L and trial counsel's failure to object precluded him from raising the matter on appeal.  *Id*. at 18-19.

While respondents maintain that this claim was never raised in post-conviction proceedings (ECF 24 at 25), Oakley counters that the supplemental petition for post-conviction relief raised this claim and it is therefore not procedurally defaulted.  ECF 26 at 2.  Review of the supplemental post-conviction petition, however, establishes that the only claim raised regarding the exhibits containing text messages and photographs of K.L. was the claim that trial counsel was ineffective for failing to show Oakley the text messages and photographs prior to trial.  ECF 14-1 at 53-54.

Failure to raise a claim in State proceedings prior to raising the claim in a federal habeas petition leads to procedural default.  Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).  A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule."  *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[4] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

---

[4] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

Relevant to this court's inquiry whether the merits of this claim should be reached in order to prevent a fundamental miscarriage of justice is the brief colloquy between Oakley and the post-conviction judge.

> [OAKLEY]: . . . One was the driver's phone.  He had two phones.  One was my phone.  Two of them was the female's phone.  And, honestly, I never knew – I didn't even – I don't know what was in it.
>
> [THE COURT]:  Well it's your phone.  You know what was in your phone.
>
> [OAKLEY]:  Yeah.

ECF 28-4 at 22.  A short time later during the post-conviction hearing, Oakley maintained that the photographs of K.L. that were introduced at trial and alleged to have been taken from his phone were not in his photographs, rather he claimed that programs such as Facebook and Instagram send thumbnail pictures to your email address whenever you connect with someone on either program. *Id*. at 25.  In rejecting Oakley's claim, the post-conviction court reasoned that the State mainly relied upon the text messages extracted from the phones rather than the photographs Oakley claimed he was unaware were on his phone.  *Id*. at 56.  The post-conviction court observed that the text messages "clearly were something that you would know went from your phone, went to someone else's phone, were on your phone in some way, shape, or form." *Id*.  The post-conviction court also observed that trial counsel did in fact object to the introduction of the extraction records from the phones and her objections were overruled and that "trial counsel was not obliged to review each and every single piece of discovery given by the State to trial counsel." *Id*. at 56-57.

To the extent Oakley's claim is procedurally defaulted, this court does not view the purported error as one that led to a miscarriage of justice.  To the extent that the claim raised on post-conviction is the same as the claim asserted by Oakley in his petition before this court, the

post-conviction court's rejection of the claim is without error.  Federal habeas relief on this claim is denied.

      b.      Failure to move for recusal of trial judge:

Oakley contends that after trial counsel objected to the trial judge assisting the State in laying a foundation for evidence, she should have also moved for the judge to recuse himself.  ECF 18 at 19.  Respondents assert that this claim is without merit as the trial record does not establish that the trial judge exhibited partiality.  ECF 24 at 27.  In his Reply, Oakley simply asserts that trial counsel had a duty to move for the judge's recusal.  ECF 26 at 2.

As set-forth above, the Court of Special Appeals properly found that the trial judge in Oakley's case did not exhibit any bias or appearance of impropriety.  Likewise, the post-conviction court adopted the reasoning of the Court of Special Appeals and observed that the trial judge did nothing more than admonish the State to lay a proper foundation without skipping steps.  ECF 28-4 at 59.  The State courts' analysis of this claim is without error and federal habeas relief shall be denied as to this claim.

      c.      Failure to discuss the State's evidence prior to trial:

In this claim, Oakley takes issue with his trial counsel's failure to discuss text messages and photographs taken from his phone and claims that had she done so he would have been more inclined to accept the plea offer of five-years by the State.  ECF 18 at 20.  As already noted, the post-conviction court rejected this claim because there is no requirement that defense counsel discuss every piece of evidence disclosed by the State during discovery and it is clear that Oakley knew what the text messages sent to and from his phone contained.  The finding of fact by the post-conviction court is not unreasonable and will not be disturbed by this court under the highly

deferential standard for evaluating such rulings.  *See Lindh*, 521 U.S. at 333, n. 7; *see also* 28 U.S.C. § 2254(d).  Relief on this ground is denied.

       d.     Failure to object to closing arguments and comments during sentencing:

Oakley first contends that the State's Attorney improperly made comments during closing argument which went "way beyond the limited summation allowed by law and trial counsel was obligated to object."  ECF 18 at 20.  The comments made by the State's Attorney which Oakley challenges pertain to counsel's supposition that he did not engage in trial tactics.  *See* ECF 28-3 at 125-126.  The post-conviction court rejected this claim because the decision as to when to object and when to refrain from doing so is a legitimate trial strategy, that defense counsel's failure to object to the challenged portion of the State's closing was not error, and the court did not believe Oakley was prejudiced by the failure to object.  ECF 28-4 at 61.  While deference to the decisions of trial counsel is not limitless, the asserted error does not establish performance so lacking that it amounts to a Sixth Amendment violation.  *See e.g. Hyman v. Aiken*, 824 F.2d 1405, 1416 (4th Cir. 1987) (lack of preparation cannot be considered deliberate, informed trial strategy) *Elmore v. Ozmint*, 661 F.3d 783, 858 (4th Cir. 2011) (failure to investigate case to enable client to make informed legal choices is not trial strategy).

Oakley also takes issue with defense counsel's failure to object during sentencing to the State's Attorney reading from a police report regarding injuries K.L. claimed Oakley inflicted upon her.  He maintains that this information was the impetus for the trial judge to impose the maximum sentence of 25 years.  ECF 18 at 21.  This claim was raised by Oakley in his post-conviction proceedings and the claim was rejected by that court because the trial court has a great deal of discretion during sentencing and when the court imposed his sentence, the police report describing K.L.'s injuries was not cited.  ECF 28-4 at 64-66.

The post-conviction court noted that the police report was not the only thing presented at sentencing, K.L.'s parents also testified.  Additionally, the trial court specifically noted K.L.'s status as a vulnerable child in need of assistance when it stated that the sentencing guidelines were inappropriate.  *Id*.  The post-conviction court also found that it was unclear that the trial court relied on the statements from the police report, but even if the judge had, there is nothing in the law making such statements objectionable.  *Id*. at 66.  Based on this reading of the factual record, the post-conviction court found that trial counsel's performance was not deficient.  *Id*.  This court finds that the post-conviction court's finding of fact and conclusion of law are without error; federal habeas relief is denied on these two grounds.

### 3.    Ineffective Assistance of Appellate Counsel

Oakley asserts that his appellate counsel rendered ineffective assistance when counsel failed to "pursue a preserved meritorious issue on appeal."  ECF 18 at 21.  The issue Oakley asserts should have been raised on appeal concerns a discovery violation by the State in connection with photographs of K.L. taken by Detective Manz.  *Id*.  The State's Attorney did not give the photographs to the defense until the morning of the first day of trial and explained he had just gotten them himself.  Defense counsel argued that the photographs were prejudicial to the defense because they depicted K.L. wearing clothing indicative of someone engaged in prostitution.  *Id*. at 22.  The trial court agreed that the State had committed a discovery violation but allowed the photographs in because they were not prejudicial to Oakley.  *Id*.

In rejecting this claim by Oakley, the post-conviction court noted that Oakley's appellate counsel raised "many grounds on appeal" which "were all rejected."  ECF 28-4 at 67.  The post-conviction court also noted that under Maryland law, "a trial court's job is not to second guess appellate counsel's judgement in selecting the most promising grounds for appeal."  *Id*.

22

To prevail on a claim that appellate counsel was ineffective for failing to raise a claim on appeal, Oakley is required to demonstrate that appellate counsel was "objectively unreasonable" for failing to raise the claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). There is no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present the points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Moreover, "[a] brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Id*. at 753. The claim that was not raised by Oakley's appellate counsel is no stronger than the claims that were raised; appellate counsel's performance was not objectively unreasonable and the post-conviction court's analysis of this claim is without error. Relief is denied on this claim.

### Conclusion

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (February 22, 2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C. § 2253(c)(2). Oakley may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate order denying the petition for writ of habeas corpus and declining to issue a certificate of appealability follows.

July 21, 2021                                                _____/s/_____
Date                                                            Stephanie A. Gallagher
                                                                United States District Judge